IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 09 C 6284 |
| v. | ) ) ) | |
| GEORGE E. MASSARO, et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Lead Plaintiffs Oakland County Employees' Retirement System ("Oakland County"), Philip R. Wilmore ("Wilmore"), and Lawrence J. Goelz ("Goelz") have brought this shareholder derivative action on behalf of nominal defendant Huron Consulting Group Inc. ("Huron") against members of Huron's Board of Directors and a number of its current and former executive officers.[1] Plaintiffs allege that the defendants overstated Huron's revenue for a period of several years, causing Huron's stock to trade at artificially inflated prices. Defendants have moved to stay the proceedings in this action pending the resolution of a separate action in Illinois state court based on the same underlying facts. For the reasons

---

[1] Listed as defendants in the complaint are George E. Massaro, DuBose Ausley, James D. Edwards, H. Eugene Lockhart, John S. Moody, John McCartney, Gary E. Holdren, Gary L. Burge, and Wayne Lipski. *See* Compl. ¶¶ 1, 22-32.

explained below, I deny the motion to stay.

## I. Background

On August 17, 2009, Huron restated its financial results for fiscal years 2006, 2007, and 2008, and for the first quarter of 2009. The restatement was related to Huron's accounting for its acquisition of several businesses between 2005 and 2007. In a July 31, 2009 press release, Huron explained:

> The restatement relates to four businesses that the Company acquired between 2005 and 2007 (the "Acquired Businesses"). Pursuant to the purchase agreements for each of these acquisitions, payments were made by the Company to the selling shareholders upon closing of the transaction and also, in some cases, upon the Acquired Businesses achieving specific financial performance targets over a number of years ("earn-outs"). These payments are collectively referred to as "acquisition-related payments."
>
> It recently came to the attention of the Audit Committee of the Board of Directors that, in connection with one of these acquisitions, the selling shareholders had an agreement among themselves to reallocate a portion of the earn-out payments to an employee of the Company who was not a selling shareholder.

Compl. ¶ 82 (emphasis omitted). Huron further acknowledged that the failure to account for these "earn-out" payments as non-cash compensation expenses constituted a violation of Generally Accepted Accounting Principles ("GAAP"). Compl. ¶ 83. As a result, plaintiffs' claim, Huron overstated its income by approximately $57 million during the years in question. Compl. ¶ 80.

On August 28, 2009, two separate suits were filed in the Circuit Court of Cook County, Illinois, alleging various causes of

action in connection with Huron's restatement. One suit, brought by Brian Hacias ("Hacias") asserted eight claims: breach of fiduciary duty (Count I); gross negligence (Count II); abuse of control (Count III); gross mismanagement (Count IV); breach of contract (Count V); waste of corporate assets (Count VI); contribution and indemnification (Count VII); and insider trading (Count VIII).

The second suit, brought by Curtis Peters ("Peters"), asserted nine claims: breach of fiduciary duty for disseminating false and misleading information (Count I); breach of fiduciary duty for failing to maintain internal controls (Count II); breach of fiduciary duty for failing to properly oversee and manage the company (Count III); unjust enrichment (Count IV); abuse of control (Count V); gross negligence (Count VI); waste of corporate assets (Count VII); breach of the fiduciary duties of loyalty and good faith by several of the individual defendants (Count VIII); and professional negligence against PricewaterhouseCoopers ("PwC") (Count IX), Huron's auditor.

On October 7, 2009, Oakland County Employees' Retirement System ("Oakland County") filed suit in the Northern District of Illinois based on Huron's restatement. On October 12, 2009, two additional complaints were filed, one by Wilmore, *see Wilmore v. Holdren et al.*, 09 C 6395 (N.D. Ill. filed Oct. 12, 2009), and one by Goelz, *see Goelz v. Holdren et al.*, No. 09 C 6396 (N.D. Ill.

filed Oct. 12, 2009). On November 23, 2009, the actions were consolidated and Oakland County, Wilmore, and Goelz were appointed Lead Plaintiffs. A consolidated complaint was filed on January 15, 2010, which asserts four causes of action: violation of section 14(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78n(a) (Count I); breach of fiduciary duty (Count II); waste of corporate assets (Count III); and unjust enrichment (Count IV).

## II. Discussion

The defendants argue that proceedings in this action should be stayed pursuant to the abstention doctrine articulated by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). "Under the rule of [*Colorado River*], when the proper exceptional circumstances exist, a federal court can abstain from exercising its jurisdiction and defer to the concurrent jurisdiction of a state court when there is a parallel state court action pending." *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1306 (7th Cir. 1988). The Seventh Circuit has emphasized that *Colorado River* abstention is appropriate only in the narrowest of circumstances. *See, e.g.*, *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006) ("The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (quotation marks omitted). "Federal courts have a virtually

unflagging obligation to exercise the jurisdiction conferred on them by Congress." *AAR Intern., Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quotation marks omitted). "[B]ecause the federal courts have a heavy obligation to exercise jurisdiction, only the clearest of justifications will warrant dismissal of the federal action in deference to a concurrent state proceeding in the name of wise judicial administration." *Id.* (quotation marks omitted).

In order to determine whether *Colorado River* abstention is appropriate, the court must engage in a two-part inquiry. "First, the court considers whether the state and federal suits are parallel." *Id.* Suits are parallel where "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (quotation marks omitted). If the suits are parallel, "the court then considers several non-exclusive factors to determine if exceptional circumstances exist to justify abstention." *Id.* Ten such factors have been enumerated:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or

contrived nature of the federal claim.

*Id.*

The "decision whether to abstain does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case," and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Board of Educ. of Valley View Community Unit Sch. Dist. No. 365U v. Bosworth*, 713 F.2d 1316, 1321 (7th Cir. 1983) (quotation marks omitted). It must be born in mind, however, *Colorado River* abstention "is disfavored even where the necessary parallel state proceeding exists," *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 668 (7th Cir. 2007) (quotation marks omitted), and that, accordingly, "the balance [is] heavily weighted in favor of the exercise of jurisdiction," *Valley View Sch. Dist.*, 713 F.2d at 1321 (quotation marks omitted).

Here, the defendants fail under both prongs of the *Colorado River* inquiry.

### A. Whether the Actions Are Parallel

As noted above, actions are "parallel" for purposes of the *Colorado River* inquiry where "substantially the same parties are contemporaneously litigating substantially the same issues." *AXA Corp. Solutions*, 347 F.3d at 278. While the plaintiffs agree that the parties are parallel in the state and federal actions, they maintain that the issues in the two cases are not. In particular,

plaintiffs point out that their complaint asserts a claim under section 14(a) of the Exchange Act and that the state court action does not.

Section 14(a) and Rule 14a-9 promulgated thereunder prohibits the solicitation of proxy statements

> containing any statement which is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

*City of St. Clair Shores Gen. Employees Ret. Sys. v. Inland W. Retail Real Estate Trust, Inc.*, 635 F. Supp. 2d 783, 789-90 (N.D. Ill. 2009) (citing 17 C.F.R. § 240.14a-9(a); 15 U.S.C. § 78n(a)).

"To state a claim under 14(a), a plaintiff must allege that: (1) the proxy statement contained a material misstatement or omission; which (2) caused plaintiff's injury; and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Id.* "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote . . . . In other words, a fact is material if, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.* (quotation marks omitted).

It is well-settled that claims under section 14(a) are exclusively within the jurisdiction of the federal courts. *See* 15 U.S.C. § 78aa ("The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."). Since the plaintiffs' section 14(a) claim cannot be asserted in state court, they contend that the federal and state actions assert substantially different claims, and that the actions cannot be deemed parallel. I agree.

Against this, defendants argue that plaintiffs' section 14(a) claim should be ignored for purposes of the *Colorado River* inquiry because the claim is "facially invalid" and frivolous. This is so, defendants maintain, because section 14(a) "regulates the solicitation of shareholder votes in proxy statements" and the "instant actions have nothing to do with proxy statements." Defs.' Mem. at 9. Defendants point out, for example, that of the three original complaints filed in federal court, only Oakland County's complaint asserted a cause of action under section 14(a), and that Oakland County's complaint made no mention of proxy statements.

The problem with this argument is that it does not address the plaintiffs' consolidated complaint, which was filed after the

defendants filed their motion to stay. Unlike Oakland County's initial complaint, the consolidated complaint makes very specific mention of proxy statements. *See* Compl. ¶¶ 55, 65, 76.

In their reply brief, the defendants advance several other grounds on which the section 14(a) claim should be disregarded. First, they take issue with the consolidated complaint's section 14(a) claim on the ground that it fails to meet the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. The Seventh Circuit recently held that section 14(a) claims are indeed subject to the PSLRA's pleading requirements. *See Beck v. Dobrowski*, 559 F.3d 680, 681-82 (7th Cir. 2009) (holding that the PSLRA is applicable to suits under section 14(a)); *City of St. Clair Shores*, 635 F. Supp. 2d at 790. Under the PSLRA, a private securities complaint alleging a false or misleading statement "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The PSLRA also provides that in "any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(2).

The plaintiffs' consolidated complaint satisfies the PSLRA's requirements. Although the allegations in Count I (in which the section 14(a) claim is asserted) may be somewhat spare, they nonetheless identify the particular statements made by the defendants and explain why the statements are alleged to be false and/or misleading. *See, e.g.*, Compl. ¶ 123. Moreover, additional allegations regarding the proxy statements are made elsewhere in the complaint, *see, e.g.*, Compl. ¶ 55, 65, 76 (recounting the statements and the dates on which they were made), and Count I incorporates these by reference, *see* Compl. ¶ 122. As for the PSLRA's requirements for pleading scienter, these do not apply to claims under section 14(a), because violation of section 14(a) does not require a mental state. *See, e.g.*, *Beck*, 559 F.3d at 682. In any event, the plaintiffs' section 14(a) claim is not so poorly pleaded as to be frivolous.

Next, defendants argue that plaintiffs' section 14(a) claim is frivolous because it is founded on the faulty premise that a public company has a duty to disclose an alleged fraud by its auditor in its proxy statements. *See* Defs.' Reply at 5. Unfortunately, since this argument was raised only in defendants' reply brief, plaintiffs had no opportunity to respond to it. It is worth

noting, however, that while they characterize the plaintiffs' claim as "preposterous," the defendants also express uncertainty as to the precise theory under which the plaintiffs are traveling. *See, e.g.*, Defs.' Reply at 3 (discussing the theory on which plaintiffs' section 14(a) claim is based, but noting that "it is hard to tell for sure"). In the absence of more thorough discussion by the parties, I decline to make any determination concerning the merits of the plaintiffs' section 14(a) claim.[2]

Lastly, defendants argue that the state and federal actions here are parallel because plaintiffs' section 14(a) claim is duplicative of causes of action available under Delaware law (which, the parties agree, applies to the state court action). In support of this argument, defendants rely on an unpublished

---

[2] Even if the defendants are correct in asserting that the plaintiffs' section 14(a) claim is insufficiently pleaded or that the theory behind the claim is somehow defective, it does not follow that the claim is "frivolous" in a way that would allow me to ignore it for purposes of *Colorado River* abstention. In arguing that the claim should be ignored, defendants rely on the statement near the end of the Seventh Circuit's opinion in *Medema v. Medema Builders, Inc.*, 854 F.2d 210 (7th Cir. 1988), that "[o]bviously, where the exclusively federal claim is frivolous, a stay is within the court's discretion." *Id.* at 215. Importantly, the court's comment was made specifically in reference to *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228 (7th Cir. 1979). *Medema* emphasized "the unique facts of that case," and pointed out that a stay was allowed in *Calvert* despite the presence of a section 14(a) claim because the plaintiff had *admitted in oral argument before the Supreme Court* that the claim was frivolous. *Medema*, 854 F.2d at 215. There has been no such concession by the plaintiffs in this case, and it is unclear whether *Medema* permits a federal claim to be ignored in the absence of similarly incontrovertible circumstances.

-11-

decision from this District, *International Jensen Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273 (N.D. Ill. Aug. 27, 1996). There, Jensen sued Emerson in federal court after rejecting Emerson's bid to purchase the company. In its suit, Jensen alleged that Emerson had committed proxy violations and had breached the parties' confidentiality agreement. *Id.* at *1. Emerson later brought suit against Jensen in Delaware state court, alleging violation of Delaware corporate law. Emerson then filed a motion in the federal action seeking an injunction to prevent Jensen's merger with another corporation. Citing *Colorado River*, Jensen asked the federal court to abstain from considering Emerson's motion. The court granted the motion, concluding that the federal and state court actions were parallel, despite the fact that the federal action asserted a claim under section 14(a). Specifically, the court held that "Delaware common law recognizes claims based on material misstatements or omissions in proxies, similar to those brought under § 14(a) of the 1934 Act," and that "the Delaware courts recognize the same standard of 'materiality' . . . recognized for § 14(a) claims." *Id.* at *4. Hence, the court held, "Emerson could have . . . if it chose, brought these very same claims which it makes here in Delaware court based on Delaware law." *Id.*

Despite its apparent similarity with the present case, *International Jensen* is not determinative here, and this for

several reasons. First, the defendants did not argue in their initial brief that the plaintiffs' section 14(a) claim was duplicative of causes of action available under Delaware law; notably, however, defendants *did* make this argument with respect to plaintiffs' aiding-and-abetting and Sarbanes-Oxley claims. Because the argument was raised for the first time only in the defendants' reply brief, it is properly deemed forfeited. *See, e.g.*, *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) (argument was waived "as the plaintiff failed to raise it until his reply brief, leaving the defendants no chance to respond").

Even putting this issue to one side, defendants have not convincingly demonstrated that the plaintiffs' section 14(a) claim is indeed duplicative of, or encompassed by, claims alleged in the state court action. The defendants do not identify the precise cause of action under Delaware law that is purportedly identical to plaintiffs' section 14(a) claim; nor is it clear in reviewing the state court complaints how they can be said to encompass the plaintiffs' section 14(a) claim. For example, while plaintiffs' section 14(a) claim involves proxy statements, neither of the complaints in the state court action makes any mention of proxies.

The Seventh Circuit has specifically instructed that "[i]f there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of

discretion for the district court to stay or dismiss." *AAR Intern.*, 250 F.3d at 518 (quotation marks omitted); *see also TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005). In light of these considerations, I cannot say that the plaintiffs' section 14(a) claim is frivolous, and am not persuaded that the state court actions would adequately resolve the claims in the instant action. Accordingly, *Colorado River* abstention is inappropriate, and I deny the defendants' motion to stay. *See, e.g., Thomas v. Acme Scientific Mold Polishing Serv. & Supply, Inc.*, No. 93 C 5314, 1993 WL 469974, at *4 (N.D. Ill. Nov. 10, 1993) ("At this early stage in the federal litigation, this Court is not prepared to conclude that Plaintiff's claim for breach of fiduciary duty stated in Count I of the complaint is frivolous.").

**B. Whether Exceptional Circumstances Exist**

Although the foregoing discussion alone dictates dismissal of the defendants' motion, I note for completeness that even if the defendants were able to show that the state and federal actions were parallel and that it was necessary to undertake the second prong of the *Colorado River* inquiry, abstention would remain inappropriate in this case. Even assuming *arguendo* that the section 14(a) claim should be disregarded for purposes of the analysis, defendants are unable to show that the relevant factors weigh strongly in their favor.

It is true that in the absence of the section 14(a) claim,

certain factors would favor the defendants. Specifically, piecemeal litigation might be avoided (factor 3); the claims would be governed by state law (factor 5); the state court action would sufficiently protect the plaintiffs' rights (factor 6); and concurrent jurisdiction would presumably exist over the claims (factor 8). Furthermore, the parties agree that the state court action cannot be removed to federal court. As a result, factor (9) weighs in defendants' favor. *See, e.g.*, *Day v. Union Mines Inc.*, 862 F.2d 652, 659-60 (7th Cir. 1988) (noting the "policy against hearing a federal claim which is related to ongoing non-removable state proceedings").

All of the remaining factors, however, are either neutral or weigh against the defendants. For example, factor (1) does not support the defendants, since the parties agree that the state court has not assumed jurisdiction over any property; factor (2) also does not favor the defendants, since defendants make no claim that the state forum is somehow more convenient than the federal forum. Indeed, factor (2) arguably weighs against the defendants, because, as the plaintiffs point out, a case related to the instant action is also pending in this Court. *Hughes v Huron Consulting Group, Inc. et al.*, No. 09 C 4734 (N.D. Ill. filed Aug. 4, 2009).

At first glance, factor (4) -- the order in which jurisdiction was obtained -- might appear to support the defendants, for it is undisputed that the state court suits were filed before the federal

suits.  On further inspection, however, the matter is more complicated.  For according to the defendants' own account, the state and federal actions have progressed to the same point.  The fact that the federal court action has reached the same stage as the state court action shows that the federal action is progressing more expeditiously than the state court action (factor (7)).  Moreover, the plaintiffs argue with some force that the delay in the state court action has been due in large part to the fact that the defendants have repeatedly moved to replace the judges assigned to the case.  *See* Pls.' Resp. Ex. A (Doc. 37-1).

Factor (5) also does not favor the defendants.  As indicated previously, plaintiffs' claims in the state court action are governed by Delaware law.  As a result, the Illinois court would be in no better position than a federal court to adjudicate the claims.  The same is true with respect to factor (10).  The defendants' claim that the plaintiffs' section 14(a) claim is contrived or vexatious is unpersuasive.  As noted above, the section 14(a) claim was asserted in the original federal complaint filed by Oakland County.  Since it antedated the current motion to stay, it is unlikely that the claim was contrived in an effort to avoid abstention.

Based on these considerations, if the factors weigh in favor of the defendants at all, they do so only moderately.  As noted above, however, *Colorado River* requires that the balance be *heavily*

*weighted* in favor of the exercise of jurisdiction. *Valley View Sch. Dist.*, 713 F.2d at 1321 (emphasis added). Simply put, defendants have failed to show the kind of exceptional circumstances that would tip the balance decidedly in their favor. Thus, even assuming *arguendo* that the state and federal actions are parallel, defendants still have failed to show that abstention would be proper here.

### III. Conclusion

For the reasons discussed above, I deny the defendants' motion to stay the proceedings in this action.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 7, 2010