**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM, et. al.** | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 09 C 6284 |
| **GEORGE E. MASSARO,** et. al. | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, three shareholders of Huron Consulting Group, Inc., have brought a derivative suit against certain of Huron's directors and current or former officers alleging violations of Section 14(a) of the 1934 Exchange Act, breach of fiduciary duty, waste of corporate assets, and unjust enrichment.[1] The directors and officers have each filed a motion to dismiss plaintiffs' amended consolidated complaint. For the reasons set forth below, both motions are granted.

I.

This action is related to a direct shareholder suit captioned *Hughes v. Huron et. al.*, 09 C 0734, also before me, which is based on substantially the same events, and which alleges securities

---

[1]The director defendants are George E. Massaro, DuBose Ausley, James D. Edwards, H. Eugene Lockhart, John S. Moody, and John F. McCartney. The officer defendants are Gary E. Holdren, Gary L. Burge, and Wayne Lipski.

fraud by Huron and by the corporate officers named in this case.[2] At the heart of both actions is Huron's July 31, 2009, press release and concurrent SEC filing stating that the company was restating its financial statements for fiscal years 2006 through 2008 and for the first quarter of 2009. As a result of the restatement, Huron's net income for the relevant time period was reduced by $57 million. The restatement explained that the company had failed to account for the redistribution of certain payments Huron made in the course of acquiring other companies in a manner consistent with Generally Accepted Accounting Principles ("GAAP").

In their amended consolidated complaint, plaintiffs allege that certain acquisition-related payments made by Huron were redistributed among the selling shareholders in amounts disproportionate to those shareholders' interests in the acquired business, or were made to Huron employees who were not selling shareholders at all. Plaintiffs further state that these payments were "earn-out" payments, which means that they were contingent upon continuing employment at Huron. Under GAAP, plaintiffs allege, Huron was required to (but did not, we must infer) account for these payments as non-cash compensation expenses and charge

---

[2] I recently denied the defendants' motion to dismiss in that case. *Hughes v. Huron Consulting Group, Inc.*,---F. Supp. 2d---, 2010 WL 3087501 (N.D. Il. 2010).

them against the company's earnings.[3]  Defendants do not dispute these allegations, which mirror Huron's own public explanations of its accounting error.

Plaintiffs' prolix complaint is dominated by extensive excerpts from various corporate documents.  First, under the heading, "Duties of the D&O Defendants,"[4] the complaint quotes from the company's "Code of Business Conduct and Ethics," the "Corporate Governance Guidelines," and the "Charter of the Audit Committee." These excerpts comprise nearly ten pages of text.  Then, after a two-paragraph segue captioned "Background," in which they describe Huron as a consulting company founded by former Arthur Andersen employees that specializes in consulting for bankruptcy, litigation, health care, and education, and state that the "vast majority" of defendants hold themselves out as financial and accounting experts,[5] plaintiffs proceed to the next section of the complaint, captioned "Defendants' False and Misleading Misstatements."  This section exceeds fifty pages in length, nearly

---

[3]Plaintiff makes no allegations as to how defendants violated GAAP, asserting only that "Huron's violation of the foregoing [GAAP principle] resulted in a material overstatement of its earnings." Huron's own public filings explain that instead of booking the acquisition-related payments as non-cash compensation expenses, Huron booked them as "goodwill."

[4]I.e., the director and officer defendants, not the nominal defendant Huron.

[5]Plaintiffs state that defendants Holdren, Lipski, Massaro, and Edwards are certified public accountants and that defendants Lockhart and McCartney hold MBA degrees.

3

all of which is devoted to quotations from all, or nearly all, of the quarterly and year-end reports Huron filed during the period covered by the restatement, as well as from company press releases stating the company's financial results. In this section, plaintiffs also allege 1) that defendants Burge and Holdren signed Sarbanes-Oxley certifications stating that they had reviewed the company's financial reports and that they were accurate and consistent with GAAP principles, and further stating that the company had in place internal procedures and controls to ensure the reliability of its financial reporting;[6] and 2) that in each of 2007, 2008, and 2009, Huron issued a Form 14-A proxy statement soliciting shareholder approval of PricewaterhouseCoopers ("PwC") as the company's independent auditor, but "failed to disclose...that PwC gave Huron's...financial statements a 'clean' audit opinion even though PwC knew that the financial statements were false and misleading."

The next section of the complaint is titled, "The Truth is Revealed" and again quotes portions of Huron's July 31, 2009, press release and Form 8-K, as well as from a Wall Street Journal article dated August 5, 2009, which reported on Huron's accounting "snafu." In the remaining sections, plaintiffs allege that defendants knowingly caused Huron to violate GAAP; that they were unjustly

---

[6]This, of course, is a very general summary of the detailed language contained in the certifications.

enriched because their compensation was based on the value of Huron's stock as it was artificially inflated due to false and misleading financial statements; and that several of the defendants engaged in unlawful insider trading.

Throughout the complaint, plaintiffs allege that defendants' wrongful acts were "knowing." Specifically, the complaint alleges that defendants knowingly caused Huron to publish false and misleading financial statements, that they knowingly violated GAAP by improperly accounting for the acquisition-related payments (and either knowingly establishing procedures to achieve this end, *see* ¶ 12, or knowingly failing to institute and maintain proper internal controls to avoid it, *see* ¶ 118), and finally, that they sold Huron stock to their unfair advantage based on their knowledge that the value of the company was inflated as a result of their own (knowing) misstatements.

Plaintiffs conclude their allegations by stating that a demand on the board of directors to investigate their claims would be futile because Huron's board of directors cannot exercise disinterested and independent judgment in assessing the merits of their claims due to their own personal and financial interest in the issues raised.

## II.

A motion to dismiss tests the sufficiency of the complaint, not its merits. *See, e.g., Gibson v. City of Chicago*, 910 F.2d

1510, 1520 (7th Cir. 1990). To state a claim under the ordinary notice pleading standards of Rule 8, a complaint must set forth sufficient factual material, taken as true, to raise the plaintiff's right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Claims sounding in fraud, however, are subject to the heightened pleading standards of Rule 9(b), regardless of whether the word "fraud" appears in the complaint. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Kennedy v. Venrock Associates*, 348 F.3d 584, 594 (7th Cir. 2003). Whether Rule 9(b) applies depends on the factual allegations of the complaint. *Borsellino*, 477 F.3d at 507. Pursuant to Fed. R. Civ. P. 23.1, before bringing a derivative action in federal court to enforce a corporate right, a shareholder must either make a demand on the corporation's board of directors or state with particularity why demand is excused. *Starrels v. First Nat. Bank of Chicago*, 870 F.2d 1168, 1170 (7th Cir. 1989).

The first ground defendants assert for dismissal is that plaintiffs, who do not claim to have made a demand on the board, have not met their burden of pleading demand futility. I agree that they have not; but because the complaint suffers from more fundamental substantive defects, I address these first before returning to the demand futility issue.

First, plaintiffs' claim under section 14(a) plainly fails to state a viable claim, and their assertion that I held otherwise in my decision of April 7, 2010, is wrong. At that time, I was confronted not with the question of whether plaintiffs' section 14(a) claim could survive a 12(b)(6) motion to dismiss, but rather whether the claim was so patently frivolous that I should disregard it altogether when considering whether to abstain from exercising jurisdiction over the case under the *Colorado River* doctrine. *See Oakland County Employees' Retirement System v. Massaro*,---F. Supp. 2d---, 2010 WL 1378562 (N.D. Ill. Apr. 7, 2010). I expressly observed that these two inquiries are distinct, *id*. at *8, fn. 2, and held merely that plaintiffs' claim was not "so poorly pleaded as to be frivolous." *Id*. at *5. Indeed, I specifically declined to rule on the viability of plaintiff's asserted theory of liability. *Id*.

Turning now to that issue, I note that plaintiffs' theory is difficult to articulate succinctly. Plaintiffs allege that proxy statements in which Huron asked its shareholders to approve PwC as the company's outside auditors were materially false and misleading because those statements did not disclose the fact that PwC knew about Huron's improper accounting but nevertheless gave Huron's financial statements "clean" audit opinions during the relevant period. Plaintiffs claim to have been injured by this omission because had they known of PwC's complicity in concealing

defendants' accounting improprieties, they would not have approved PwC as auditors, "and the errors in Huron's financial statements may have been revealed much sooner."

This serpentine theory fails on its premise, since nothing in plaintiffs' complaint supports the "fact" that PwC knew about, yet concealed, defendants' improper accounting. It is no answer to say that violations of section 14(a) do not require scienter. The very articulation of plaintiffs' claim makes it obvious that PwC's knowledge of defendants' improper accounting is crucial to their theory of liability. Without it, the claim makes no sense at all, since PwC's purported knowledge is precisely the information alleged to have been misleadingly omitted from the proxy statements. In any event, plaintiffs' asserted injury is "too attenuated to support a proxy solicitation claim." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 797 (11th Cir. 2010). *See also General Electric Co. v. Cathcart*, 980 F.2d 927, 933 (3rd Cir. 1992) (damages recoverable under section 14(a) claim only where the transaction authorized by the vote solicited in the proxy statement was direct cause of pecuniary harm).

Nor is the enormity of the accounting error sufficient, standing alone, to plead PwC's knowledge. Plaintiffs' cited authority, *In re Eagle Building Technologies, Inc.*, 319 F. Supp. 2d 1318 (S.D. Fla. 2004), and *In re Williams Securities Litigation*,

339 F. Supp. 2d 1206 (N.D. Okla. 2003), is not to the contrary. In neither case did the court infer knowledge based on the magnitude of the error alone. Instead, each considered the magnitude of the alleged fraud in conjunction with other factors alleged, such as the auditor's disregard of specific "red flags." *See, e.g., Williams Securities Litigation*, 339 F. Supp. 2d at 1240.

Next is plaintiffs' breach of fiduciary duty claim. The parties dispute the pleading standard that applies to this claim. The officer defendants contend that the claim sounds in fraud and is therefore subject to the heightened pleading standards of Rule 9(b). The director defendants assert that as to them, the claim is governed by the exacting standards set forth in *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996), for claims of deficient corporate oversight, a species of due care breach. Plaintiffs insist, however, that the claim is subject only to the notice pleading standards of Rule 8. They further argue that their claim against the directors is not properly characterized as asserting deficient oversight but instead, a ***knowing*** violation of their duty of good faith. (Plaintiffs' emphasis).

The distinction plaintiffs emphasize, which arises in the context of their demand futility argument, is geared toward distinguishing between breaches alleged to arise out of directorial

9

inaction versus those arising out of affirmative wrongful action.[7] Setting demand futility aside for the time being, however, the shortcomings in plaintiffs' substantive allegations under any of the proposed standards are clear. The amended consolidated complaint is simply bereft of substantive allegations to support plaintiffs' multitudinous assertions of defendants' knowledge that Huron's accounting was improper. This problem ultimately infects all of plaintiffs' claims.

As the officer defendants point out in their reply, the bulk of plaintiffs' complaint consists of uncontested facts and legal principles: that defendants owed plaintiffs fiduciary duties; that Huron's financial statements during the relevant period were false and misleading for their failure to follow GAAP; and that massive investor losses resulted. The only factual allegations that can reasonably be read to support an inference that defendants knew Huron's accounting was improper are the statements about their professional expertise. As I noted in *Hughes*, while such

---

[7]With this argument, plaintiffs seek not only to distinguish their claim from the one in *Caremark*, which the court called "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment" 698 A.2d at 967, but also to support their argument that the *Aronson* test for demand futility applies, rather than the *Rales* test. These tests are discussed further below. For now, I note that plaintiffs have not alleged that the director defendants had any direct role in making accounting decisions, or even that they were informed of Huron's accounting for the acquisition-related payments. Accordingly, it is difficult to construe their claim against these defendants as anything other than deficient oversight.

allegations are relevant as part of the context in which to assess whether plaintiffs' factual allegations of scienter are sufficient, they do not, standing alone, support a plausible claim for relief on a theory that hinges on defendants' knowledge. 2010 WL 3087501 at *4. *Cf. In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2006 WL 3714708 at *9 (N.D. Ill. July 12, 2006); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1277 (M.D. Fl. 2009); and *Branca v. Paymentech, Inc.*, No. Civ.A.3:97-CV-2507-L, 2000 WL 145083, at *10 n.20, *11 (N.D. Tex. Feb. 8, 2000) (all dismissing claims in which allegations of the defendants' knowledge were based on their financial or accounting expertise). It is clear from plaintiffs' emphasis throughout their complaint and opposition briefs that their claim is premised on defendants' knowledge of the falsity of Huron's financial statements. Even under Rule 8, plaintiffs must plead some factual basis to support their theory of liability. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged.") But plaintiffs offer merely "'naked assertions[s]' devoid of 'further factual enhancement.'" *Id.*, (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 557 (2007)). Under any pleading standards, plaintiffs' allegations fail to state a claim for breach of fiduciary duty.

Plaintiffs' corporate waste claim is similarly flawed. The theory underlying this claim appears to be that because bonuses paid to defendants Holdren, Burge, and Massaro were based on the company's artificially inflated financial results, Huron received nothing in exchange for the compensation they received. To prevail on their claim, plaintiffs ultimately would have to meet the "onerous" burden of proving that "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 74 (Del. 2006) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)). Because "the size and structure of executive compensation are inherently matters of judgment," 746 A.2d at 263, claims for corporate waste that are based on allegations of excessive compensation "are confined to unconscionable cases where directors irrationally squander or give away corporate assets." *Id*. Moreover, "the proper focus of a waste analysis must be whether the amounts required to be paid...were wasteful *ex ante*." *In re Walt Disney*, 906 A.2d at 74.

In this case, plaintiffs concede that the challenged bonuses appeared to be "justified...at the time." They argue, however, that they became wasteful once the company's seemingly impressive financial results were revealed as "illusory." But the *ex post* revelation that executive bonuses were higher than they ought to have been does not support a claim for corporate waste. Of course,

12

plaintiffs allege that defendants knew all along that Huron's financial results were inflated (and so, the argument might go, although the rest of the world might have been duped into thinking the bonuses were appropriate, defendants knew they were excessive). But plaintiffs' failure to allege defendants' knowledge that Huron's accounting violated GAAP cuts this theory off at the knees as well.

Finally, plaintiffs claim unjust enrichment. In response to defendants' challenge to this claim, plaintiffs argue that "[f]or the same reasons that Plaintiffs have pled claims for breach of fiduciary duty and corporate waste, they have pled a claim for unjust enrichment." Indeed, for the same reasons those claims fail, this one does too, and for other reasons as well. As plaintiffs acknowledge, unjust enrichment under Delaware law requires "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (De. Ch. 1998). Plaintiffs rely on the alleged insider stock sales to support their claim, but, as defendants point out, even assuming that defendants were enriched by these sales, there is no relation between this enrichment and any impoverishment of Huron. That is, it was not Huron but unknown buyers in the open market who purchased Huron stock in the allegedly suspect sales. Huron simply

13

has no interest in the monies paid to defendants by these buyers, and thus no unjust enrichment claim based on the stock sales.

Moreover, plaintiffs' theory of insider trading is belied by the very facts laid out in their complaint. Plaintiffs argue that defendants' stock sales were "timed...to coincide with the release of Huron's artificially inflated financial statements." Yet plaintiffs' own chart of defendants' stock sales reflects sales in February, March, May, June, July, August, September, and November. On its face, this chart disproves plaintiffs' theory of "suspect" timing. For this reason, too, the alleged insider sales do not support plaintiffs' claim for unjust enrichment.

****

I stated at the outset that I would return to the issue of demand futility. Although Fed. R. Civ. P. 23.1 governs the pleading requirements applicable to derivative actions brought in federal court, "the requirement of a shareholder demand is more than a pleading requirement, it is a substantive right of the shareholder and the directors." *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795, 803 (7th Cir. 2003) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99 (1991)). Accordingly, Delaware law governs whether the facts alleged in the complaint are sufficient to excuse demand. *In re Abbott*, 325 F.3d at 804; *Starrels v. First Nat. Bank of Chicago*, 870 F.2d 1168, 1170 (7th Cir. 1989).

The parties dispute whether the demand futility analysis is governed by *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), or by *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). The *Aronson* test, championed by plaintiffs, "applies to claims involving a contested transaction, i.e., where it is alleged that the directors made a conscious decision in breach of their fiduciary duties." *Wood v. Baum*, 953 A.2d 136, 140 (De. 2008). Under the *Aronson* test, demand is excused if, under the particularized facts alleged, "a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Brehm*, 746 A.2d at 253 (citing *Aronson*, 473 A.2d at 814). The *Rales* test "applies where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties" and "requires that the plaintiff allege particularized facts establishing a reason to doubt that 'the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'" *Wood*, 953 A.2d at 140 (quoting *Rales*, 634 A.2d at 934).

I need not decide which is the proper test in this case because plaintiffs' demand futility allegations are insufficient under either test. Plaintiffs argue that the board cannot assess their claim independently and disinterestedly because of the likelihood that the board members will incur personal liability for

15

the wrongdoing alleged. But, as plaintiffs acknowledge, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815 (rev'd on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)). To excuse demand based on the personal interest of the board's members, plaintiffs must establish, through particularized factual allegations, a "substantial likelihood" of liability on the part of the directors. *Id*. The facts to which plaintiffs point to support this inference, however, are none other than the same insufficient allegations that underlie their substantive claims, for example: 1) that defendants knowingly violated GAAP in accounting for several important transactions; 2) that defendants are experts in accounting, corporate governance, regulatory, and compliance issues; 3) that Huron restated its financial statements because of GAAP violations; and 4) that certain defendants engaged in suspect insider stock sales. As discussed in the foregoing section, these allegations fail to support a viable claim for relief. A fortiori, they fail to establish "a substantial likelihood" of liability on the part of any of the defendants, or to overcome the "business judgment" presumption.[8]

---

[8]Plaintiffs argue that this presumption does not apply because the director defendants acted in bad faith. Of course, bad faith requires deliberate wrongdoing, which presupposes the knowledge

16

III.

For the foregoing reasons, defendants' motions to dismiss are granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 7, 2010

---

plaintiffs have failed to plead. See *In re Walt Disney*, 906 A.2d at 67. (Bad faith requires intentional act "with a purpose other than that of advancing the best interests of the corporation").

17