**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM, et. al.** | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 09 C 6284<br>)<br>) |
| **GEORGE E. MASSARO,** et. al. | )<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this case, shareholders of Huron Consulting Group, Inc., assert derivative claims against members of the company's board of directors and three former executive officers. Following my September 7, 2010, dismissal of plaintiffs' first amended consolidated complaint, *see Oakland County Employees' Retirement System v. George E. Massaro*, 736 F. Supp. 2d 1181 (N.D. Ill. 2010), which alleged violations of Section 14(a) of the 1934 Exchange Act, breach of fiduciary duty, waste of corporate assets, and unjust enrichment, plaintiffs filed a second amended consolidated complaint on October 12, 2010. In this complaint, plaintiffs have eliminated their federal securities claim but reassert the state claims I previously found defective. The directors and officers have each filed a motion to dismiss the second amended consolidated complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 23.1(b). For the reasons that follow, I grant both motions.

I.

My previous opinion set forth in some detail the factual allegations supporting plaintiffs' claims, and I need not repeat them here, particularly since--previewing one reason defendants' motions have merit--plaintiffs' amended complaint is materially unchanged from its previous iteration. The second amended complaint again identifies as the seminal event giving rise to plaintiffs' claims Huron's public announcement, on July 31, 2009, that it would restate its financial results for fiscal years 2006 through the first quarter of 2009. In that announcement, Huron disclosed that its Audit Committee had discovered that the company had accounted for certain payments made in connection with Huron's acquisition of other companies in a manner that was inconsistent with Generally Accepted Accounting Principles ("GAAP"), which allowed the company to artificially inflate its earnings. This announcement caused Huron's stock to plummet, causing massive investor losses.

Plaintiffs allege that the director defendants knew all along that Huron's accounting violated GAAP, and according that these defendants knowingly caused Huron to make false and misleading statements regarding its financial results. As to the director defendants, plaintiffs' carefully worded allegations do not assert actual knowledge of Huron's accounting irregularities. Instead, they allege that these defendants "knowingly failed to make a good

faith effort to implement appropriate internal controls to prevent the misconduct and actively monitor the reporting and accounting procedures related to key acquisitions and the valuation of goodwill in connection therewith."[1] Similarly, plaintiffs allege that the director defendants "knowingly failed to make a good faith effort to implement appropriate monitoring, reporting or information controls to institute preventive and corrective measures." Plaintiffs' allegations make clear that the director defendants lacked "the critical information" that would have tipped them off to Huron's accounting irregularities. They assert, however, that these defendants are liable for their own lack of information, since it was attributable to a "sustained and systematic failure to exercise oversight."

II.

Under federal notice pleading standards, a motion to dismiss under Rule 12(b)(6) may be granted only if, taking all of its well-pleaded factual allegations as true, it fails to set forth sufficient material to raise a right to relieve above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because derivative shareholder suits such as this assert rights belonging to the corporation, shareholders ordinarily

---

[1] As explained in my previous opinion, the improper accounting at issue involved booking certain payments as "goodwill," which meant they did not offset income on Huron's balance sheet, while under GAAP they should have been recorded as non-cash compensation expenses, which do offset income.

must make a demand on the board of directors to take action before initiating a suit on the corporation's behalf. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96-97 (1991).

In this connection, derivative plaintiffs must, pursuant to Rule 23.1, plead with particularity either the efforts they have made to obtain the desired action from the board, or the reasons such efforts would be futile. *Kamen*, 500 U.S. at 96. "In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim. 'Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf.'" *In re Veeco Instruments, Inc. Securities Litigation*, 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006) (quoting *Levine v. Smith*, 1989 WL 150784, *5 (Del. Ch. 1989), aff'd 591 A.2d 194 (Del.1991)). The substantive rules for determining whether a plaintiff has satisfied the Rule 23.1 standard are a matter of state law. *King ex rel. Cephalon Inc. v. Baldino*, No. 09-3834, 2010 WL 5078008 at *1 (3rd Cir. Dec. 14, 2010) (citing *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992) (other citations omitted).

Delaware law, which applies in this case because Huron is a Delaware corporation, recognizes two tests for demand futility: the *Aronson* test, articulated in *Aronson v. Lewis*, 473 A.2d 805 (Del.

4

1984), and the *Rales* test, announced in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). The parties previously disagreed about which test governs this case, but plaintiffs have since clarified their theory of director liability and now concede that *Rales* applies.[2] Indeed, the *Rales* test is appropriate in the context of claims of the sort recognized in *In re Caremark Int'l Inc. Derivative Litigation*, 698 A.2d 959 (Del Ch. 1996), in which director liability is premised not on any action by the board, but instead on the board's "considered inaction." *Veeco*, 434 F. Supp. 2d at 274. Evaluating demand futility in the *Caremark* context requires me to determine whether "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgement in responding to a demand." *Id.* (quoting *Rales*, 634 A.2d at 934).

One way in which directors may be "interested" in the demand is if they would be personally liable for the conduct alleged by the shareholders. *See Aronson*, 473 A.2d at 815. Here, plaintiffs allege that the director defendants are interested because they

---

[2]As I noted in my previous opinion, it was unclear from the allegations in plaintiffs' first amended complaint whether they were asserting deliberate wrongdoing by directors or rather a culpable failure to act. The present allegations make clear that their claims against the director defendants are based on the latter.

face "a substantial likelihood of liability" for the alleged breaches of their fiduciary duties. Compl. at ¶¶ 69, 113, 114. Their choice of words is no accident. Under Delaware law, the "mere threat" of personal liability does not excuse demand. *Id*. Only in "rare cases" of board misconduct "so egregious on its face" as to give rise to "a substantial likelihood of director liability" is demand excused. *Guttman v. Huang,* 823 A.2d 492, 500, n. 15 (Del. Ch. 2003) (quoting *Aronson*, 473 A.2d at 815).

Plaintiffs' burden is particularly high in this case because, as I observed in my previous opinion, their *Caremark* claim presents "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Oakland County Employees' Retirement System v. George E. Massaro*, 736 F. Supp. 2d 1181, 1187 at n. 7 (N.D. Ill. 2010) (quoting *Caremark*, 698 A.2d at 967). Indeed, numerous courts, including the Third Circuit, the District of Columbia Circuit, and courts from around the country have made the same observation, and have declined to find demand excused in the *Caremark* context. *E.g.*, *King ex rel. Cephalon Inc. v. Baldino, No. 09-3834,* 2010 WL 5078008 (3rd Cir. Dec. 14, 2010); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust,* 534 F.3d 779, 789 (D.C. Cir. 2008); *In re Veeco Instruments*, Inc. Securities Litigation, 434 F. Supp. 2d 267, 276 (S.D.N.Y. 2006); *In re Verifone Holdings, Inc. Shareholder Derivative Litigation*, Nos. C 07-6347 MHP, C 07-6140 MHP, 2010 WL 3385055 at *10 (N.D. Cal.

2010); *In re Nutrisystem, Inc., Derivative Litigation*, 666 F. Supp. 2d 501, 524 (E.D. Pa. 2009); *Guttman v. Huang*, 823 A.2d 492, 507 at n. 33 (Del. Ch. 2003).

As the Third Circuit has stated, the *Caremark* standard "requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)." *Pirelli*, 534 F.3d at 789) (citation omitted). To establish a substantial likelihood of liability based on a *Caremark* claim, a plaintiff must allege facts that show "an utter failure to oversee the corporation," *Cephalon*, 2010 WL 5078008 at *2 (citing *David B. Shaev Profit Sharing Account v. Armstrong*, No. Civ. A. 1449-N, 2006 WL 391931 at *5 (Del. Ch. Feb. 13, 2006))), for example "that the company entirely lacked an audit committee or other important supervisory structures, or that a formally constituted audit committee failed to meet." *Id.* Or, a plaintiff may plead "that the directors were conscious of the fact that they were not doing their jobs," or that they "ignored red flags indicating misconduct in defiance of their duties." *Cephalon*, 2010 WL 5078008 at *2 (citing *Shaev,* 2006 WL 391931 at *5).

Plaintiffs' allegations fall far short of this standard. First, although they attribute to Huron's board a "sustained and systematic failure to exercise oversight," they allege a singular accounting impropriety at the heart of their claims. True, the

7

accounting transgression was repeated in similar transactions over the span of several years; but the alleged misconduct is still a far cry from the kind of far-reaching, varied, and substantial fraud that only a seriously flawed system of internal controls could fail to detect. *Cf. In re American Intern. Group, Inc.*, 965 A.2d 763, 799 (Del. Ch. 2009) (concluding that the "diversity, pervasiveness, and materiality" of the alleged misconduct supported "substantial likelihood" of *Caremark* liability, but noting that one discrete instance of serious wrongdoing would not have created a reasonable inference that directors knew the company's internal controls were broken). And although plaintiffs allege that Huron's Audit Committee should have detected the company's improper accounting, they allege no facts to suggest that the Audit Committee either failed to meet or otherwise failed to function as it should have.

Next, despite plaintiffs' insistence that they have identified "various red flags," their argument reveals a fundamental misunderstanding as to what constitutes a "red flag" in this context. "Red flags in this context are facts showing that the board ever was aware that the corporation's internal controls were inadequate." *Cephalon*, 2010 WL 5078008 at *2 (citation and textual modifications omitted). Although plaintiffs do not specify which facts they consider to be "red flags," they appear to refer to allegations about: 1) the importance to Huron of the acquisitions

8

involving payments improperly accounted for; 2) the magnitude of the accounting discrepancy; and 3) the directors' professional qualifications. None of these allegations suggests that the director defendants ignored "red flags" of the kind that would support *Caremark* liability. Likewise, none of these facts suggests that the director defendants "were conscious of the fact that they were not doing their jobs." Morever, as the Third Circuit noted in *Pirelli,* "[u]nder Delaware law, a Board of Directors is not a Board of Accountants." 534 F.3d at 789. And while certain of the director defendants (a minority of Huron's board) were indeed accountants, they were not *Huron's* accountants. Plaintiffs' allegations that the director defendants failed to detect the company's improper accounting simply do not create a "substantial likelihood" of personal liability under *Caremark*.

### III.

For the foregoing reasons, I conclude that plaintiffs have not demonstrated demand futility, and I need not address the remaining issues raised in defendants' motions. Plaintiffs' second amended consolidated complaint is dismissed with prejudice.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 22, 2011